**Miguel VINES, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**No. 92–4419.**

United States Court of Appeals, Eleventh Circuit.

Aug. 17, 1994.

Harvie S. DuVal, Greenfield & Duval, Miami, FL, for appellant.

Linda Collins Hertz, William Xanttopoulos, Asst. U.S. Attys., Miami, FL, for appellee.

Before COX and BIRCH, Circuit Judges, and SMITH,* Senior Circuit Judge.

COX, Circuit Judge:

This appeal arises out of the denial of Miguel Vines's § 2255 motion. On this appeal we must determine whether the temporary absence of a defendant's trial counsel during the presentation of evidence necessarily gives rise to an irrebuttable presumption of prejudice that mandates vacation of that defendant's conviction. We conclude that the temporary absence of counsel during the presentation of evidence is not per se violative of the Sixth Amendment right to the assistance of counsel.

## I. BACKGROUND

In June of 1988, a senior Customs inspector examined the shipping documents of a shipment of ninety-one boxes of fresh fish that had arrived at the Miami International Airport on a flight from Panama. Not recognizing the company listed as the shipment's consignee, and suspicious of the address to which the shipment was to be delivered, the Customs inspector determined that the shipment should be physically inspected. An inspection revealed that at least one of the ninety-one boxes contained cocaine. Based on that discovery, the entire shipment was placed under surveillance by Customs.

Several men arrived at the airport and loaded the ninety-one boxes onto a truck and transported the boxes to a warehouse. At the warehouse, two men unloaded the boxes under the direction of a third man, Manuel Casas. Eighty-five of the boxes were moved inside the warehouse and the other six were loaded into a small pickup truck driven by Jorge Fabal. Fabal drove the truck to an apartment complex.

At the complex, Fabal exited the truck and entered an apartment. Shortly thereafter, Fabal left the apartment with his brother-in-law, Miguel Vines. Vines entered a van parked next to the truck that Fabal had driven. With Vines's assistance, Fabal moved the six boxes from the truck to the van. A short time passed, and Fabal reloaded the six boxes into the truck. Then, Vines moved the truck and Fabal parked a car next to the van. At that point, Fabal and Vines moved several opaque plastic items from the van to the trunk of the car.

After that final transfer, Customs agents arrested Vines and Fabal. Agents recovered from the trunk of the car five or six packages wrapped tightly in yellow tape and covered with plastic. The packages contained 95.33 kilograms of 81% pure cocaine. Other Customs agents arrested Casas at the warehouse and proceeded to search the warehouse pursuant to a search warrant.

A federal grand jury returned a two-count indictment charging Casas, Vines and Fabal with: (1) conspiracy to possess with intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. § 846, and (2) possession of at least five kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Ex. 1–1). Casas and Vines were tried together.[1] The trial lasted two days. At about 4:15 p.m. on the first day of trial, the court excused Vines's counsel for the remainder of the day.[2] Prior to Vines's counsel's departure, the court instructed the jury: "Members of the jury, Mr. Shapiro [Vines's attorney] has got another important matter that he has to attend to. This witness won't testify as to his particular client. His client has waived his

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Fabal was a fugitive at the time of the trial and was not tried together with Casas and Vines.

2. The record is silent as to why Vines's counsel needed to abandon his client during the taking of evidence.

presence for the remainder of the afternoon, so we will excuse Mr. Shapiro at this time." (Ex. 2 at 142–43).[3] During Vines's counsel's absence, two witnesses testified for the prosecution: Special Agent Hank Blair and Donald Evans.[4]

Blair's testimony centered around the arrest of Casas and the search of the warehouse. (Ex. 2 at 143–160). Blair testified about items found in Casas's briefcase at the warehouse. In addition, Blair testified, over Casas's attorney's objection, that the items discovered in the briefcase and the manner of shipping employed in this case fit the *modus operandi* of contraband smugglers. Casas's attorney cross-examined Blair about the arrest of Casas, the search, the evidence secured from that search, and Blair's opinion regarding the specific facts of this case vis-à-vis drug smuggling operations generally. (Ex. 2 at 160–176).

Evans, as part owner and operator of the warehouse, simply testified about leasing the space where the fish shipment was delivered. (Ex. 2 at 176–182). Evans could not identify the individuals to whom he had leased the space. (Ex. 2 at 179). Casas's attorney briefly cross-examined Evans about the nature of the relevant lease. (Ex. 2 at 182). Thereafter, the court called a recess. (Ex. 2 at 182–83). The trial resumed the following Monday morning with Vines's counsel present.

Casas was convicted on both Counts I and II. (Ex. 1–53). Vines was acquitted on Count I, the conspiracy charge, and convicted on Count II, the distribution charge. (*Id.*).

On direct appeal, Vines and Casas challenged the sufficiency of evidence supporting their convictions. Vines also contested the use of a modified *Allen*[5] charge and claimed ineffective assistance of counsel because of the absence of his attorney during the taking of evidence. In an unpublished opinion, we affirmed the convictions but declined to address Vines's claim of ineffective assistance of counsel, noting that it should be raised in a 28 U.S.C. § 2255 motion. *United States v. Casas*, 897 F.2d 535 (11th Cir.1990) (Ex. 1–98 at 8, 9 n. 5).

Thereafter, Vines, proceeding pro se, filed a § 2255 motion. (R.1–100). Therein, Vines advances two arguments in support of his contention that his Sixth Amendment right to counsel has been violated. First, Vines argues that he did not voluntarily and knowingly waive his right to counsel. (*Id.* at 5). Second, Vines asserts that he was denied effective assistance of counsel based on his trial counsel's absence during the taking of evidence. (*Id.*). Without an evidentiary hearing, a magistrate judge recommended that Vines's § 2255 motion be denied. (R. 1–116 at 12). In so recommending, the magistrate judge concluded that Vines waived his right to counsel, that the temporary absence of his counsel did not warrant a presumption of prejudice, and that Vines suffered no prejudice as a consequence of his counsel's temporary absence during trial. (*Id.* at 9, 11–12). Vines objected to the magistrate judge's report and recommendation. (R. 1–117). The district court denied Vines's § 2255 motion "[f]or the reasons stated in the report of the Magistrate Judge." (R. 1–118). This appeal follows.

## II.  CONTENTIONS OF THE PARTIES & ISSUE ON APPEAL

Vines contends that his Sixth Amendment right to counsel was violated because his trial

---

3. Prior to Vines's attorney's departure, the following exchange occurred outside the presence of the jury:

    THE COURT: At 4:15 I am going to release Mr. Shapiro [Vines's attorney] and at that time, regardless of who is on the stand, the government will put on—where is Mr. Xanttopoulos [Prosecutor]? The government will put on a witness who pertains only to Mr. Tarkoff's client, who will not have any testimony regarding Mr. Vines, so Mr. Vines, do you waive the presence of your attorney during that time?
    DEFENDANT VINES: Yes.
    THE COURT: You explained it to him?

    MR. SHAPIRO [VINES'S ATTORNEY]: Yes, I discussed this with him and he has no objection.
    THE COURT: All right, very good.
    (Ex. 2 at 107–08). We do not address the question of whether Vines waived his right to counsel.

4. Exhibits were also introduced, without objection, during Vines's counsel's absence.

5. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

counsel was temporarily absent during the taking of evidence. In support of that contention, Vines argues that under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the temporary absence of counsel gives rise to an irrebuttable presumption of prejudice and his conviction must therefore be vacated. In the alternative, Vines argues that his conviction must be vacated because prejudicial testimony was taken while his trial counsel was absent. The Government counters that no prejudicial testimony was taken during Vines's counsel's absence and that Vines is not entitled to a presumption of prejudice under *Cronic.*[6] Accordingly, the Government argues that the district court's denial of Vines's § 2255 motion should be affirmed and Vines's conviction should stand.

## III. STANDARD OF REVIEW

■ The claim that the temporary absence of trial counsel during the taking of evidence constitutes a Sixth Amendment violation presents a mixed question of law and fact and, as such, is subject to plenary review. *See Lusk v. Dugger,* 890 F.2d 332, 336 (11th Cir.1989) (concluding that an ineffective assistance of counsel claim, which presents a mixed question of law and fact, is subject to plenary review), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990).

## IV. DISCUSSION

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25

L.Ed.2d 763 (1970). To establish a claim of ineffectiveness of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must demonstrate (1) that his counsel's performance was deficient and (2) that his counsel's deficient performance resulted in prejudice. *Id.* at 687, 104 S.Ct. at 2064. Under *Strickland,* prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

Vines argues that his Sixth Amendment right to counsel was violated because his trial counsel was temporarily absent during the taking of evidence. *Strickland* assumes the presence of counsel and is therefore inapplicable in the absence of counsel context. *Strickland* is therefore inapplicable in this case.[7]

■ In the companion case to *Strickland, United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court carved out a narrow exception to the two prong *Strickland* test. *Cronic* recognizes that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* 466 U.S. at 658, 104 S.Ct. at 2046. *Cronic* teaches that prejudice will be presumed if: (1) counsel is completely denied; (2) counsel is denied at a critical stage of trial; or (3) counsel fails to subject the prosecution's case to meaningful adversarial testing. *Id.* at 659, 104 S.Ct. at 2047. This presumption of prejudice is seemingly irrebuttable since "the cost of litigating [its] effect ... is unjustified." *Id.* at 658, 104 S.Ct. at 2046.

Vines contends that where a defendant is temporarily denied the assistance of counsel,

---

**6.** The Government advances two additional arguments in opposition to Vines's § 2255 motion. First, the Government argues that Vines waived his Sixth Amendment right to counsel. Second, the Government argues that Vines's co-defendant's attorney agreed to represent Vines's interest during Vines's counsel's absence and that Vines was therefore never unrepresented by counsel. Because we conclude that any error based on Vines's counsel's temporary absence was harmless, we need not address these arguments.

**7.** "The crucial premise on which the *Strickland* formula rests—that counsel was in fact assisting the accused during the proceedings and should be strongly presumed to have made tactical judgments ... is totally inapplicable when counsel was absent from the proceedings and unavailable to make any tactical judgments whatsoever." *Siverson v. O'Leary,* 764 F.2d 1208, 1216 (7th Cir.1985) (citation omitted).

that defendant is entitled to an irrebuttable presumption of prejudice under *Cronic*. In order to apply *Cronic* in this case, however, we must conclude that Vines's claim falls under one of the three circumstances *Cronic* enumerates as an exception to the *Strickland* standard.[8] Vines was not completely denied counsel. Rather, Vines's counsel was temporarily absent during a portion of the actual trial. Vines does not contend that his trial counsel failed to subject the prosecution's case to meaningful adversarial testing. Thus, in order for Vines to be entitled to a presumption of prejudice, we must conclude that Vines was denied counsel at a critical stage of trial within the meaning of *Cronic*.

■ Vines argues that under *Cronic* the taking of evidence is a critical stage of trial per se. Vines proffers no authority that compels this court to reach that conclusion; and, we decline to give birth to a rule that the taking of evidence is necessarily a critical stage of trial. Upon review of the record, we find that no evidence directly inculpating Vines was presented during his counsel's absence. Where, as in this case, no evidence directly inculpating a defendant is presented while that defendant's counsel is absent, we decline to hold that counsel was absent during a critical stage of trial within the meaning of *Cronic*. Accordingly, we conclude that Vines's counsel was not absent during a critical stage of trial, and Vines is therefore not entitled to a presumption of prejudice under *Cronic*.

Having concluded that Vines's temporary absence of counsel claim cannot be analyzed under *Strickland* or *Cronic*, we must deter-

mine the appropriate analytical framework for reviewing his claim.[9] Vines asserts that his Sixth Amendment right to counsel was violated because his counsel was absent during the taking of evidence. We assume, without deciding, that Vines establishes constitutional error by showing that his trial counsel was absent during the taking of evidence. In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.* at 22, 87 S.Ct. at 827.

We have previously applied the harmless-error analysis in the contexts of absence of counsel at a preliminary hearing, *Thomas v. Kemp*, 796 F.2d 1322 (11th Cir.), *cert. denied*, 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986), and absence of counsel when the court delivered a modified *Allen* charge to the jury, *United States v. Rapp*, 871 F.2d 957 (11th Cir.), *cert. denied*, 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 184 (1989); *see also United States v. Guida*, 792 F.2d 1087, 1091–94 (11th Cir.1986) (applying harmless-error analysis in a case where a judge, responding to a request by the jury, allowed the jury to study an unredacted copy of a witness and exhibit list without notifying or consulting defendant's counsel). It would be incongruous to hold that the absence of counsel while a jury is being instructed should be subject

---

**8.** "*Cronic's* presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Chadwick v. Green*, 740 F.2d 897, 901 (11th Cir. 1984).

**9.** Two of our sister circuits have grappled with the question of how to analyze a temporary absence of counsel claim. In *Green v. Arn*, 809 F.2d 1257 (6th Cir.), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (6th Cir.1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989), the Sixth Circuit held that "[t]he absence of counsel during the taking of evidence on the defendant's guilt is prejudical [sic] per se

and justifies an automatic grant of the writ 'without any opportunity for a harmless error inquiry.'" *Id.* at 1263 (emphasis added) (quoting *Siverson*, 764 F.2d at 1217–18 n. 6). However, the *Green* court also recognized that "some absences by a criminal defendant's attorney might be so de minimis that there would be no constitutional significance." *Id.* at 1261.

The Seventh Circuit has held that "the proper standard for determining the prejudice resulting from the ... [temporary absence of counsel] is the same standard that was applied to similar errors prior to *Strickland:* whether the error was harmless." *Siverson*, 764 F.2d at 1217 (so holding in a case where counsel was absent during jury deliberations and the return of the verdict).

to harmless-error analysis but that the absence of counsel during the taking of non-inculpatory testimony is not susceptible to harmless-error analysis.

However, in order to determine whether Vines's claim is susceptible to harmless-error analysis, we must first address the query of whether the temporary absence of Vines's counsel during the taking of evidence amounts to a "structural defect" or a "trial error." *Duest v. Singletary*, 997 F.2d 1336, 1338 n. 3 (11th Cir.1993), *cert. denied,* — U.S. ——, ——, 114 S.Ct. 1107, 1126, 127 L.Ed.2d 418 (1994). Trial errors are subject to harmless-error analysis; structural defects are not. *Id.* A trial error is an "error which occur[s] during the presentation of [a] case to [a] jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). Conversely, structural defects affect "the framework within which the trial proceeds," *Id.* at 310, 111 S.Ct. at 1265; "they involve deprivations of constitutional protections so basic that in their absence no criminal trial can be deemed reliable, nor any punishment fundamentally fair," *Duest,* 997 F.2d at 1338 n. 3. Typical structural errors are the total deprivation of the right to counsel at trial, a trial judge who is not impartial, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, and the denial of the right to a public trial. *Fulminante,* 499 U.S. at 309–10, 111 S.Ct. at 1265.[10]

Vines alleges constitutional error based on the temporary absence of his trial counsel during the taking of evidence—the testimony of Blair and Evans. Vines contends that if his counsel had been present he would have objected to Blair's drug smuggler profile testimony, and if overruled, he would have requested a limiting instruction as to

Vines. In addition, Vines argues that if his counsel had been present he would have cross-examined both Blair and Evans. We conclude that counsel's failure to object and cross-examine are "capable of quantitative assessment in relation to all the evidence at trial in order to determine whether it was harmless." *Duest,* 997 F.2d at 1338 n. 3.[11]

Vines proffers no authority that would compel us to conclude that the temporary absence of counsel is necessarily a structural defect. The Supreme Court has held that the *total* deprivation of counsel amounts to a structural defect. *Fulminante,* 499 U.S. at 309, 111 S.Ct. at 1265 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). That holding is predicated upon the recognition that "[t]he entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant." *Id.* at 309–10, 111 S.Ct. at 1265. We conclude that the *temporary* absence of a defendant's trial counsel during a *portion* of the actual trial does not necessarily affect the conduct of the entire trial. While trial counsel may exercise poor judgment in absenting himself or herself from a portion of a trial, such flawed judgment does not necessarily infect the entire trial. For example, in a multi-defendant trial, testimony may be presented regarding one defendant that does not inculpate another defendant. Though we do not countenance the abandonment of a defendant by his counsel even during the presentation of non-inculpatory testimony, we cannot say that such an absence compromises the entire trial of that defendant such that harmless-error analysis would be inapplicable. Because we find that Vines's counsel's alleged errors are capable of quantitative assessment and that no inculpatory evidence was presented during the temporary absence of his counsel, we conclude that the absence of Vines's counsel constitutes a trial error subject to harmless-error analysis.[12]

---

**10.** This list is merely illustrative, not exhaustive.

**11.** The Supreme Court recognizes that "[i]t may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks." *Hollo-*

*way v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978).

**12.** Because Vines was acquitted on the conspiracy charge, our analysis in this case focuses only on the distribution charge.

In *Brecht v. Abrahamson,* — U.S. —, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the Supreme Court held that the harmless-error standard enunciated in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), "applies in determining whether habeas relief must be granted because of constitutional error of the trial type." *Brecht,* — U.S. at —, 113 S.Ct. at 1722.[13] Because Vines's § 2255 motion is a collateral attack, we must apply the *Kotteakos* standard. Under *Kotteakos,* a defendant is entitled to reversal only when error resulted in "actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *See United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986) (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253). The appropriate inquiry is not whether the jury was right in its judgment

> regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.
>
> . . .
>
> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. at 1247–48. Thus, our task is to determine whether the temporary absence of Vines's counsel during the testimony of Blair and

Evans had a substantial influence on the jury's verdict in this case.

In determining whether Blair's and Evans's testimony had a substantial influence on the jury's conviction of Vines on Count II—possession with intent to distribute cocaine—we must address two questions. First, did that testimony directly inculpate Vines? Second, did that testimony indirectly prejudice Vines's defense of the offense of which he was convicted?

As to the first question, we find that neither Blair's nor Evans's testimony directly inculpates Vines. Rather, upon review of the record, we find that Blair's and Evans's testimony simply inculpates Casas and serves to describe the overarching drug smuggling operation in this case while paralleling it to the typical *modus operandi* of contraband smugglers.

As to the second question, Vines argues that he was indirectly prejudiced by Blair's and Evans's testimony. Vines asserts that the jury applied the testimony regarding the *modus operandi* of contraband smugglers to him and that if his counsel had been present during that testimony such prejudice could have been avoided. In support of that assertion, Vines advances three spurious arguments. Vines argues that if his counsel had been present during such testimony, his counsel would have objected to the admission of Blair's testimony regarding the *modus operandi* of drug smugglers. (Appellant's Br. at 43). At the very least, Vines argues, such an objection would have yielded "an instruction to the jury that the drug smuggler profile testimony was not applicable to VINES." (*Id.*). Finally, Vines argues that if his counsel had been present he would have cross-examined Blair and Evans in order to establish that there was no connection whatsoever between Vines and the matters about which Blair and Evans testified. (Appellant's Br. at 42).[14]

We find Vines's argument regarding cross-examination totally unpersuasive. Neither

---

**13.** However, the Supreme Court did recognize that its "holding does not foreclose the possibility that in an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief,

even if it did not substantially influence the jury's verdict." *Brecht,* — U.S. at —, 113 S.Ct. at 1722 n. 9.

**14.** On appeal, Vines proposes a hypothetical cross-examination of Blair. (Appellant's Br. at

Blair nor Evans directly referred to, or even alluded to, Vines. Vines argues that his counsel could have emphasized the fact that neither Blair's nor Evans's testimony related to him. The cross-examination of a witness who has said nothing harmful to one's case is a perilous undertaking, and generally inadvisable. We reject the suggestion that Vines would have benefited from this kind of cross-examination.

We find equally unpersuasive Vines's argument that if his counsel had been present he could have prevented the admission of Blair's drug smuggler profile testimony. Vines's co-defendant's counsel objected to the admission of that testimony, and the trial judge overruled the objection. (Ex. 2 at 155–57). Vines's suggestion that his counsel's objection to Blair's testimony might have met with success is, at best, disingenuous.

Vines also argues that his counsel could have prevented him from being prejudiced by Blair's and Evans's testimony by requesting a limiting instruction. We note that prior to Blair's testimony, the judge instructed

the jury that Blair "won't testify as to" Vines. (Ex. 2 at 142–43). We doubt that Vines was entitled to a more explicit limiting instruction. Assuming arguendo that Vines was entitled to a limiting instruction, we conclude that Vines suffered no harm as a consequence of the admission of Blair's testimony. We find nothing in Blair's and Evans's testimony that would have "substantially influenced" the jury to convict Vines of possession with intent to distribute cocaine—Count II. Vines's acquittal on Count I—the conspiracy charge—suggests that the jury did not link Blair's and Evans's testimony to Vines. Accordingly, we conclude that the temporary absence of Vines's counsel during the testimony of Blair and Evans was harmless.

## V. CONCLUSION

We affirm the district court's denial of Vines's § 2255 motion.

AFFIRMED.

BIRCH, Circuit Judge, dissenting:

By taking a harmless error analytical approach, the majority has overlooked the prin-

38–41). The following is illustrative of his proffered cross-examination:

*Actual Testimony—Agent Blair (TR. Vol. 1, pp. 157–158) APP. 70–72*

THE WITNESS: They will assign it to an address and a name. Upon importation of the cargo, it is subject to inspection by the U.S. Customs Service. If narcotics is found, they like to have a last escape valve to walk away.

In this case the cargo, it says on the paper the consignee Greater Trading was to receive it. It did not go there. They took it to another place.

The advantage of this is the day that the inspector found it and we did not carry the controlled delivery or the attempt to make the control deliver forward, what we would have, what I would have, anybody who would investigate this case would essentially have the narcotics itself, would be the information contained on this air waybill.

It didn't go there. It went to Greater Trading. Who is Greater Trading? I mean, basically it's a shell.

*Hypothetical Cross–Examination*

Q Did you find any connection of any kind between Mr. Vines and the address and name on the waybill or the name of the corporation or any of the organizers?

*Hypothetical Answer*

A No.

*Actual Question—Agent Blair (TR. Vol. 1, pp. 158, 159) APP. 72, 73*

Q. Let me ask you this. In referring to the documents you have found here in Mr. Casas' briefcase and the use of traveler's checks and money orders to pay the bills of Greater Trading, including the utility bills, what's your opinion as to that, as to how that fits into the modus operandi for smuggling of cargo?

A. This is consistent, because if you are reporting it, unfortunately in your perspective it is seized, you want to minimize the chance of myself or any agent following up any trail.

If you showed a person cash, had you written a check on your personal checking account or corporate account, it leaves a trail. However, you can go into a bank, go into a post office. You can give them the money and tell them you want a money order, a cashier's check, of a certain amount, you can merely [sic] maintain total anonymity.

The day comes, as in this case, it is sort of a dead end.

*Hypothetical Cross Examination* [sic]

Q Did you in your entire investigation find any evidence whatsoever of any connection between Mr. Vines and the documents you found in Mr. Casas' briefcase, including the traveler's checks, money orders, utility bills or any other document or transaction of any kind?

*Hypothetical Answer*

A No.

(Appellant's Br. at 39–40).

cipal constitutional violation and issue on appeal: waiver of the Sixth Amendment right to counsel. Counsel's *absence from trial*, complete or temporary, is a fundamental constitutional deprivation that is not amenable to harmless error exception. While constitutional waiver of the right to counsel is recognized, it is doubtful that such waiver occurred in this case. Therefore, I respectfully dissent.

## I. RELEVANT FACTS

In relating the pertinent sequence of events at trial, the majority gives an incomplete description and omits a key fact—Vines, an Hispanic, does not speak or comprehensively understand English. Additionally, he had no previous criminal history. Prior to the judge's discussion with counsel outside the presence of the jury concerning excusing Vines's attorney, the arresting Customs agent had testified that he had read Vines's rights to him in Spanish. Ex. 2–82. Initiated by the district judge, the relevant discussion took place at approximately 3:00 P.M. on Friday, November 4, 1988, the first day of the two-day trial of Vines and codefendant Casas. In an apparent attempt to expedite the trial, the district judge explained that Vines's counsel had to leave at

1. The court's discussion with counsel was as follows:

> THE COURT: Mr. Shapiro [Vines's attorney] has to leave at 4:15. I wonder if we couldn't at that time take the *testimony that doesn't pertain to your client* and let Mr. Tarkoff [Casas's attorney] stand in for you for whatever reason.
> How long will that take, have you got more than one witness that will pertain *only* to Mr. Tarkoff's client?
> MR. TARKOFF: Don't look at me.
> MR. XANTTOPOULOS [AUSA]: I am thinking of what I have got.
> I have got the case agent, who is acting as the case agent, he is going to leave town after today. I would like to put him on as soon as possible to get him over with.
> THE COURT: Will he have things to say about Mr. Shapiro's client?
> MR. XANTTOPOULOS: He will testify about all the things that were found on Mr. Casas and he will also talk about what those things mean to him.
> *I think they relate to Mr. Vines indirectly* through the conspiracy, but he won't mention anything firsthand about seeing Mr. Vines and

4:15 P.M. and suggested that codefendant Casas's attorney "stand in" for Vines's counsel. Ex. 2 at 106. The judge then asked the government if its prospective witness would testify about Vines, to which the prosecutor responded "indirectly." [1]

The district judge then made the following announcement to counsel:

> THE COURT: When the jury comes back we will go on the record and then I will just tell the jury that you had another problem, I have released you and Mr. Tarkoff [Casas's attorney] will stand in for you during the rest of the afternoon.

> . . . .

> MR. TARKOFF: To be honest with you, I would rather you tell the jury that Mr. Vines has waived [his] right to have counsel present during the balance of the afternoon than to tell them that I am standing in for him. It looks so conspiratorial in a conspiracy case.
> THE COURT: All right.
> MR. TARKOFF: Obviously if something happens that I think would affect him I would ask if we could have a side bar.
> MR. XANTTOPOULOS: He is stepping in. Call it as it is.
> MR. TARKOFF: *Then I won't do it.*[2]

the business in the parking lot of Mr. Vines. He has nothing to do with that.
Ex. 2 at 106 (emphasis added).

2. The government persists in its contention that Vines was not without counsel because Tarkoff, codefendant Casas's attorney, was representing him. The majority declines addressing this argument. Majority Op. at 1127 n. 6. Tarkoff stated unequivocally that he was not acting as Vines's counsel or "standing in" for Shapiro. Additionally, the trial transcript does not evidence that Tarkoff acted as Vines's attorney. While he made objections and cross-examined the two witnesses that *testified during Shapiro's absence, no* objections were made or cross-examination conducted on behalf of Vines. Thus, the government's contention that Tarkoff represented Vines is factually incorrect.

I am more disturbed by the district judge's proposing such corepresentation in view of contrary Supreme Court and circuit direction. The Court has recognized that representation of codefendants can violate the Sixth Amendment right to counsel and expressed concern at a trial *court's intrusion upon a defendant's right to his* counsel; the assistance of counsel "guaranteed

Ex. 2 at 106, 107 (emphasis added). Following a brief recess, the judge told counsel that he was releasing Vines's counsel at 4:15 P.M. He also asked Vines if he waived the presence of his attorney, to which Vines responded with a single word, "Yes," and, subsequently asked the *attorney* if he had explained "it" to him, the portion of the trial transcript that the majority relegated to a footnote. Majority Op. at 1126 n. 3.

At the appointed time in the afternoon, the judge informed the jury that Vines's counsel was excused, that the *prosecution witness* who would testify in that absence would not relate to Vines, and that Vines had waived the presence of his counsel. During the following testimony, the Customs case agent aligned the shipment in this case with the *modus operandi* of contraband smugglers. Tarkoff objected to this testimony; the court

overruled his objection. Tarkoff cross-examined the case agent as to his client, and he elicited that Casas was arrested because there was cocaine in the fish shipment.

The government then persuaded the judge to allow it to call an *additional witness,* who had not been considered before Vines's counsel left.[3] The court's concern with this witness was brevity, not whether he might implicate Vines.[4] This witness was the owner of the warehouse, where the fish shipment containing cocaine was destined. Tarkoff cross-examined the witness. Exhibits were admitted into evidence during the testimonies of the Customs case agent and the warehouse owner while Vines's counsel was absent. The trial adjourned at 5:15 P.M. and resumed at 8:30 A.M. on Monday, November 7, 1988.

---

by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." *Glasser v. United States,* 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); *see United States v. Alvarez,* 580 F.2d 1251, 1256 (5th Cir.1978) (holding that an attorney acting under a conflict of interests in his representation violated an accused's due process rights under the Fifth Amendment as well as assistance of counsel rights under the Sixth Amendment). The Court further found that the consolidated representation of codefendants in a conspiracy trial is especially susceptible to constitutional problems:

> In conspiracy cases, where the liberal rules of evidence and the wide latitude accorded the prosecution may, and sometimes do, operate unfairly against an individual defendant, it is especially important that he be given the benefit of the undivided assistance of his counsel without the court's becoming a party to encumbering that assistance.

*Glasser,* 315 U.S. at 76, 62 S.Ct. at 467–68. Even if Tarkoff and Vines had agreed to the representation of the codefendants, the trial judge would have had to obtain a waiver from Vines of representation with a conflict of interest by having Vines "personally articulate in detail his intent to forego this significant constitutional protection." *United States v. Garcia,* 517 F.2d 272, 278 (5th Cir.1975); *see United States v. Zajac,* 677 F.2d 61, 63 (11th Cir.1982) (per curiam) (acknowledging that *Garcia* established a procedure for determining a valid waiver of conflict-free counsel). While "a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests," *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978), "such waivers are not to be lightly or casually inferred and must be knowingly and intelligently made,"

*Alvarez,* 580 F.2d at 1259. "The record should show, in some way, that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." *United States v. Rodriguez,* 982 F.2d 474, 477 (11th Cir.1993) (per curiam), *cert. denied,* —— U.S. ——, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993).

The trial judge in this case clearly did not contemplate the requisite determination of waiver of counsel without a conflict of interests, when he suggested that Vines's codefendant's attorney could also represent him. Because the record reveals that Tarkoff refused to represent him, Vines essentially proceeded pro se during the portion of his trial that Shapiro was absent. Without understanding English or the criminal justice system, Vines was in a precarious position to represent his own interests.

3. Although this witness had been present throughout the day, the potential of his testimony or its content was not mentioned before Vines's counsel was excused.

4. The discussion concerning this additional witness in the absence of Vines's counsel was as follows:

> MR. XANTTOPOULOS: Your Honor, I don't know what time we are considering breaking today.
> THE COURT: Right now.
> MR. XANTTOPOULOS: I have one civilian witness who will be very short. *He has been waiting out there all day. Anyway we can sneak him in?*
> THE COURT: He won't be long, right?
> MR. XANTTOPOULOS: About ten minutes.
> THE COURT: *Okay, put him on.*

Ex. 2 at 176 (emphasis added).

On the second day of trial, another Customs case agent testified that he interviewed Vines in Spanish. Ex. 3 at 200. When Vines testified on the same day, he did so with an interpreter. On Tuesday, November 8, 1988, while the jury was deliberating, the trial judge was aware that Vines did not speak English fluently:

> THE COURT: One of them doesn't understand any English?
>
> MR. SHAPIRO [Vines's attorney]: He understands some English. I would waive the translator for purposes of this proceeding.

Ex. 4 at 2. There is no indication and there has been no representation that an interpreter was present when the judge excused Vines's attorney. We learned at oral argument that Vines's attorney was fluent in Spanish.

In his pro se section 2255 petition to vacate his conviction in the district court, Vines argued that his Sixth Amendment right to counsel had been violated on two bases. First, he contended that he did not voluntarily and knowingly waive his retained counsel's presence.[5] Second, he argued that he was denied effective assistance of counsel.

In response, the government requested oral argument. Replying to the government, Vines requested an evidentiary hearing on whether he knowingly relinquished his Sixth Amendment rights. Without benefit of oral

argument or an evidentiary hearing, a magistrate judge recommended that relief be denied because Vines did waive his attorney's presence and the testimony presented in the lawyer's absence did not relate directly to Vines's participation in the crimes charged and was not prejudicial to him. The magistrate judge predominantly analyzed Vines's petition as ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

After filing his pro se section 2255 petition, Vines retained counsel. His attorney filed timely objections to the magistrate judge's report and recommendation. He contended that Vines did not knowingly waive his attorney's presence and that he was denied effective assistance of counsel. Notwithstanding these objections, the district court denied relief to Vines "[f]or the reasons stated in the report of the Magistrate Judge." R1–118.

Vines pursued his contentions of the invalidity of his waiver of his attorney's presence and ineffective assistance of counsel in this appeal. As the majority concedes, ineffective assistance of counsel analysis under *Strickland* is inappropriate when counsel is absent.[6] The only viable issue that Vines presents to us is waiver, and, indeed, I find it is dispositive. Yet, the majority chooses not to address the question of whether Vines waived his right to counsel.[7] Majority Op. at 1126 n. 3.

---

5. In pertinent part, Vines's pro se section 2255 petition states his ground for relief based on denial of counsel at trial as follows:

   The Court granted the petitioner's counsel the right to leave the court proceedings *while the trial was in session.* The petitioner did not waive his rights within the meaning of the fifth and sixth amendments. The Court failed to address the petitioner in respect to the right to counsel at all stages of the proceedings against him.... [T]he petitioner claims that the witnesses could have been cross examined as to the intent in count two [the distribution count of Vines's conviction], and without a hearing on the subject of what else counsel may have cross examined the witnesses to the record will be insufficient to properly decide this issue.

   R1–100–5 (emphasis added); *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam) (pro se petitions are held to less stringent standards than those drafted by attorneys).

6. Vines has no complaints regarding the performance of his attorney *while he was present* during the trial. He is not contesting an attorney error, but an *absence* of his counsel. Vines thus raises a Sixth Amendment issue concerning the *absence* or *deprivation* of his counsel from the trial, which is constitutionally permissible only if there has been a valid waiver of the right to counsel. Therefore, *waiver* is the proper analysis for this appeal.

7. Interestingly, the concluding paragraph in Vines's reply brief before this court clearly summarizes his primary contention in district court and to us that he did not constitutionally waive his right to counsel: "The district court in excusing Appellant's counsel without clearly determining that Appellant knowingly and intelligently waived his Sixth Amendment right of counsel for the rest of the afternoon while the government continued to prosecute the case against him mandates a presumption of prejudice." Appellant's Reply Brief at 8.

## II. WAIVER ANALYSIS

The determination of whether waiver of counsel was knowing and intelligent is a mixed question of fact and law subject to *de novo* review. *Strozier v. Newsome*, 926 F.2d 1100, 1104 (11th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991). "The burden of proof is on petitioner to show that the waiver did not meet constitutional standards." *Id.; see Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938). Accordingly, our review should encompass an examination of the facts and the governing law to decide whether Vines has shown that his waiver of counsel was unconstitutional.

"The assistance of counsel is a requisite to the very existence of a fair trial and the Sixth Amendment assures that a defendant cannot be deprived of personal liberty, whether the crimes charged are classified as petty, misdemeanor, or felony, unless he has *legal counsel at trial,* or he has *understandingly, intelligently and voluntarily waived assistance of legal counsel.*" *Ford v. Wainwright*, 526 F.2d 919, 921 (5th Cir.1976) (emphasis added). "The right to counsel ... attaches automatically and must be waived affirmatively to be lost...." *Stano v. Dugger*, 921 F.2d 1125, 1143 (11th Cir.) (en banc), *cert. denied,* — U.S. ——, 112 S.Ct. 116, 116 L.Ed.2d 85 (1991). The Supreme Court has emphasized the importance of protecting the right to counsel and carefully ascertaining the knowing and intentional waiver of this fundamental right:

> "[C]ourts indulge every reasonable presumption against waiver" of fundamental constitutional rights and ... we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. *The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.*

*Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023 (emphasis added) (footnotes omitted). Waiver of counsel must be voluntary, "in that it resulted from a free and deliberate choice and not from coercion." *United States v. Gaddy*, 894 F.2d 1307, 1312 (11th Cir.1990). It is the *"responsibility, obligation and duty of the Trial Judge"* to make this "serious determination of waiver," and *"such determinations should appear plainly on the record."* *Ford,* 526 F.2d at 922 (emphasis added) (citing *Carnley v. Cochran*, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)).

Vines contends that his simple answer, "Yes," to the trial judge's question as to whether he waived his right to counsel was not an effective waiver because it was not knowing and voluntary. As a stranger to the criminal justice system and with a limited understanding of English, Vines claims that he had no way of knowing the consequences of not having his counsel present at trial. Absent the benefit of the *trial judge's* discussing with Vines the potential consequences of his proceeding without counsel, the judge *could not have known* whether his waiver of counsel was knowing, intelligent and voluntary.

We do not know the nature of the pressing matter [8] that required Vines's retained counsel to be absent from his client's trial on that Friday afternoon or the character of the discussion that he had with Vines prior to his departure.[9] The content of the discussion between Vines and his counsel regarding the attorney's absence, however, is not dispositive of the waiver issue before us. Counsel cannot waive for a defendant "an 'inherently personal right of fundamental importance,'" such as the right to representation by counsel. *United States v. Joshi*, 896 F.2d 1303, 1307 (11th Cir.) (quoting *Poole v. United*

---

8. There is nothing in the record to show the nature of the matter that required Shapiro's presence, and no explanation has been given on appeal. Because the district judge introduced the subject of Shapiro's absence with the indication that he had decided to excuse him, it appears that the judge had knowledge of the reason for the request and had decided to permit Shapiro to leave.

9. At oral argument, it was postulated that the extent of the discussion between Vines and his counsel could have been no more than Shapiro's telling Vines that he had to leave.

*States,* 832 F.2d 561, 564 (11th Cir.1987), *cert. denied,* 488 U.S. 817, 109 S.Ct. 54, 102 L.Ed.2d 33 (1988)), *cert. denied,* 498 U.S. 986, 111 S.Ct. 523, 112 L.Ed.2d 534 (1990). Affirming habeas relief for the *temporary absence* of defendant's counsel *during trial,* the Sixth Circuit faulted the trial judge for depriving the defendant of his right to counsel by arranging the counsel's absence with the attorney *instead of the defendant:*

> Our holding that petitioner was denied a fair trial is *buttressed by the actions of the trial judge.* In *Siverson [v. O'Leary,* 764 F.2d 1208 (7th Cir.1985) ], the Seventh Circuit noted that in situations where a defendant is without assistance of counsel at a critical stage, "the court can help protect the defendant's rights by at least insuring that the defendant is aware of and understands the right to have counsel present...." In the instant case, *the trial judge seemed to believe that he and [the attorney] could decide, without consulting petitioner, when [the attorney] could absent himself from the proceedings.* Thus, in a situation where the impairment of petitioner's Sixth Amendment right was easy to identify and prevent, the government instead acted to further the deprivation. In such circumstances there is little reason to allow the government to attempt to show a lack of prejudice.

*Green v. Arn,* 809 F.2d 1257, 1263–64 (6th Cir.) (emphasis added) (citations omitted), *vacated on other grounds,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated,* 839 F.2d 300 (6th Cir.1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989).

Regarding the determination that a trial judge must make to decide that a defendant has waived conflict-free counsel, we have decided that, "[a]lthough the court should try to elicit *narrative* replies, *'[m]ere assent* in response to a *series of questions* from the bench' may in some cases constitute adequate waiver." *United States v. Rodriguez,* 982 F.2d 474, 477 (11th Cir.) (per curiam) (emphasis added) (quoting *United States v.*

*Garcia,* 517 F.2d 272, 278 (5th Cir.1975)), *cert. denied,* —— U.S. ——, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993). Significantly, the trial judge failed to engage in any semblance of a colloquy with Vines to determine if he knowingly, intelligently and voluntarily waived his right to counsel. Had he done so, he immediately would have realized that Vines did not speak English, and this appeal might not be before us. Vines clearly was incapable of discussing in English the constitutional consequences of proceeding without his counsel with the trial judge.

Additionally, Vines may have felt coerced. The district judge had discussed his attorney's absence with that counsel and had agreed to dismiss Shapiro at 4:15 P.M. *before* he asked Vines if he waived his attorney's presence. Therefore, he presented the waiver of counsel question to Vines as a *fait accompli* because he already had decided to allow Shapiro to leave.

Vines's single-word, affirmative response is insufficient waiver to show the relinquishment of his Sixth Amendment right to counsel under Supreme Court authority and the law of our circuit. There is a substantial and significant difference between *consent* and *constitutional waiver of counsel,* especially given Vines's specific limitations. The district court placed the wrong emphasis on the communication of constitutional rights to an Hispanic man in his first encounter with our legal system: the importance for waiver purposes was not on what Shapiro *told* Vines concerning his absence and his Sixth Amendment rights, but on what Vines *understood,* to be determined by the judge's questioning him. This responsibility of determining if the waiver of counsel was knowing, intelligent and voluntary is placed on the trial judge, not on the defendant's counsel. *See Johnson,* 304 U.S. at 464, 58 S.Ct. at 1023; *Ford,* 526 F.2d at 922. The district judge failed to protect Vines's Sixth Amendment rights by not determining whether his waiver of counsel was knowing, intelligent and voluntary.[10]

---

**10.** In view of Vines's Sixth Amendment rights at stake, the district judge had two more appropriate alternatives when confronted with Shapiro's request to be excused for the last hour of the trial day on that Friday afternoon. He could have denied his request to leave or he could have recessed until the following Monday, when the trial was scheduled to continue. In either case,

The district judge's failure to make a complete record relative to waiver of counsel was compounded by the lack of review of this issue in the district court. Counsel on both sides requested a hearing. Without a hearing or *any* constitutional analysis, the magistrate judge simply concluded that Vines's one-word answer was sufficient waiver of counsel.[11]

Significantly, Vines filed timely objections to the magistrate judge's report and recommendation. He contended that he did not knowingly waive his Sixth Amendment right to have his counsel present at trial.[12] The district judge did not review independently Vines's timely objections to the magistrate judges's report and recommendation. Instead, the judge adopted the reasons of the magistrate judge and denied Vines's section 2255 petition.

"Whenever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue." *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988). We must be satisfied that the district judge has not merely reviewed the magistrate judge's report, but, pursuant to his statutory, nondelegable responsibility, has arrived at an independent conclusion concerning the portions to which objections have been made. *Stokes v. Singletary,* 952 F.2d 1567, 1576 (11th Cir.1992); *see* 28 U.S.C. § 636(b)(1) (When a party timely has filed written objections to a magistrate judge's report, "[a] judge of the court *shall make* a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." (emphasis added)). The terse, one-sentence final judgment in this case gives us no indication that the district judge considered *de novo* Vines's objection to the magistrate judge's summary conclusion that Vines's waiver of counsel was knowing and voluntary, the principal basis of this appeal.

I conclude that the waiver issue has not been reviewed properly in the district court. Therefore, the record in this case does not enable us to determine if Vines's waiver of his right to counsel was knowing, intelligent

this appeal concerning Vines's knowing and voluntary waiver of counsel would not have occurred. Instead, the district judge elected to proceed with the trial of a defendant in the absence of his retained counsel, suggested that the codefendant's attorney represent him, and failed to make a reviewable record on waiver of counsel from a defendant, who likely did not understand English or our criminal justice system.

Apparently, the district judge was attempting to expedite the trial as well as to accommodate counsel. This appeal exemplifies the judicial inefficiency of the judge's decision to continue with the trial for an hour in the absence of Vines's counsel. More importantly, defendants' constitutional rights must not be jeopardized to accommodate counsel.

11. The reviewing magistrate judge summarily concluded that Vines voluntarily and intelligently waived his right to the presence of his counsel for the limited time of Shapiro's absence because: during Shapiro's absence, Vines consented to the presentation of two government witnesses; he agreed to have his interests protected by codefendant Casas's attorney, Tarkoff; he did not object during counsel's discussion of this matter with the judge at approximately 3:00 P.M. and remained silent when ·Shapiro left at 4:15 P.M.; and the judge appropriately instructed the jury regarding the government testimony to be taken during Shapiro's absence. Not only did the magistrate judge perform no constitutional analysis of the waiver issue raised by Vines, but also she incorrectly stated pertinent facts.

12. Vines further contended that his counsel's absence precluded prevention of his association with the drug smuggler profile through the *modus operandi* described by the Customs case agent, who testified during Shapiro's absence. Vines argues that neither the district judge nor Shapiro appreciated the prosecutor's statement to the court that the Customs case agent would testify "indirectly" as to Vines. Although Vines was acquitted on the conspiracy charge, he was convicted on the distribution charge.

Arguably, were it not for inferences from the conspiracy, that is that Vines knew that the fish containers actually concealed cocaine, he would not have been convicted for distribution. On direct appeal, we found sufficient evidence to support Vines's conviction and were unpersuaded by his argument that he was an innocent, unwitting participant in his brother-in-law's criminal activity. Thus, to convict Vines for distribution, it is conceivable that the jury made inferences from the circumstantial evidence, and any testimony or evidence relating to the cocaine smuggling operation could have been significant to their determination.

and voluntary. A remand should be required to make this determination. With the majority's decisional analysis, Vines's Sixth Amendment right to counsel was not waived or reviewed constitutionally in the district court, and this potential constitutional violation is ignored by our court.

## III. THE MAJORITY'S APPROACH

The majority takes an innovative approach in this case. Using a creative, process-of-elimination rationale, it concludes that the temporary absence of Vines's counsel during trial was "harmless error." I find the majority's analysis to be flawed and constitutionally untenable. Moreover, it sets a dangerous precedent that finds no direct support in Sixth Amendment jurisprudence.

### A. *Ineffective Assistance of Counsel*

The majority admits that *Strickland* and ineffective assistance of counsel analysis "assume[ ] the presence of counsel and [are] therefore inapplicable in the absence of counsel context. *Strickland* is therefore inapplicable in this case." Majority Op. at 1127. I agree with the majority's ostensible conclusion.[13] The majority, however, does not appear to mean what it says.

The majority prefaces its analysis by citing the standard of review from an ineffective assistance of counsel case, *Lusk v. Dugger,*

890 F.2d 332, 336 (11th Cir.1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 805 (1990). Majority Op. at 1127. It then moves from its quotation of the core, Sixth Amendment right to counsel to quote the derivative, Court-created right to "effective" assistance of counsel. *Id.* (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)); *see Golden v. Newsome,* 755 F.2d 1478, 1482 (11th Cir.1985) (the right to effective assistance of counsel is separate from, but related to the right to be represented by counsel). If the majority is convinced that this is *not* an ineffective assistance of counsel case, then why does it discuss the right to effective assistance of counsel and set forth the requirements for establishing an ineffectiveness claim under *Strickland*? Majority Op. at 1127.

The majority heavily incorporates into its analysis *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), which it correctly notes is "the companion case to *Strickland.*" Majority Op. at 1127. *Cronic,* however, is an ineffective assistance of counsel case, not an absence of counsel case. The counsel in *Cronic* was young and inexperienced, but he was *never absent* from his client's trial. In fact, the Supreme Court determined that his representation was adequate. It is treacherous to isolate subsid-

---

**13.** The Sixth Amendment right to be represented by counsel is separate from the related right to effective assistance of counsel. *Golden v. Newsome,* 755 F.2d 1478, 1482 (11th Cir.1985) (citing *Strickland,* 466 U.S. 668, 104 S.Ct. 2052; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). " '[T]he general rule [is] that a petitioner claiming ineffective assistance of counsel must demonstrate that he was *prejudiced by specific alleged errors in his counsel's performance.*' " *Stano,* 921 F.2d at 1153 (emphasis added) (quoting *Stone v. Dugger,* 837 F.2d 1477, 1479 (11th Cir.1988) (per curiam), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 821 (1989)). The *presence* of counsel is implicit in ineffective assistance of counsel analysis so that specific alleged errors in the representation may be examined for prejudicial effect.

In contrast, "the two-pronged *Strickland v. Washington* test is inappropriate where the issue is the *denial of the assistance of counsel,* rather than a claim that *counsel who was present was ineffective.*" *Green,* 809 F.2d at 1262 (emphasis

added). "*Strickland* involved a claim of *ineffective* assistance of counsel; here, we are concerned with a claim of *denial* of assistance of counsel." *Crutchfield v. Wainwright,* 803 F.2d 1103, 1108 (11th Cir.1986) (en banc) (plurality opinion), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). The Supreme Court has suggested that certain circumstances, such as absence of counsel at a critical stage, are presumptively prejudicial. *United States v. Cronic,* 466 U.S. 648, 658–59, 104 S.Ct. 2039, 2046–47, 80 L.Ed.2d 657 (1984). Because counsel's absence from the proceedings is deficient as a matter of law, "[w]here the Sixth Amendment claim is the *denial,* rather than the ineffective assistance, of counsel, the criminal defendant need *only show that counsel was absent* during a critical stage of the proceedings in order to establish the constitutional violation." *Green,* 809 F.2d at 1263 (emphasis added); *see Golden,* 755 F.2d at 1481 n. 6 (absence of counsel is presumptively prejudicial).

iary, general statements in an opinion and elevate them to the holding or "teach[ing]" of a case that addressed very different facts. *Id.*

> It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.

*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821).

As the majority's footnote indicates, our circuit has recognized that *Cronic* appropriately applies to egregious cases of counsel's ineffectiveness, not to counsel's absence. Majority Op. at 1128 n. 8 (quoting *Chadwick v. Green,* 740 F.2d 897, 901 (11th Cir.1984)). For the majority to determine that Vines's claim that the temporary absence of his counsel violated his Sixth Amendment right to counsel must be determined "within the meaning of *Cronic*" is an inapposite comparison of an ineffective assistance of counsel case with an absence of counsel case. *Id.* at 1128. I conclude that the majority's repeated reliance on *Cronic* to analyze Vines's absence of counsel claims is misplaced, particularly when there are cases on point, as I discuss herein.

### B. *Internally Inconsistent*

The majority states that *"Cronic* teaches that prejudice will be presumed if ... counsel is denied at a critical stage of trial" and that "[t]his presumption of prejudice is seemingly irrebuttable since 'the cost of litigating [its] effect ... is unjustified.' " *Id.* at 1127 (quoting *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046). The majority thereafter announces that "we decline to give birth to a rule that the taking of evidence is necessarily a critical stage of trial." *Id.* at 1128. As *justification* for the conclusion that the taking of evidence is not a critical stage of trial proceedings, per se, the majority undertakes the type of harmless error analysis that *Cronic* instructs is *inappropriate* where counsel is denied at a critical stage of trial, to wit: "Where, as in

this case, no evidence directly inculpating a defendant is presented while the defendant's counsel is absent, we decline to hold that counsel was absent during a critical stage of trial within the meaning of *Cronic."* *Id.*

Even under the majority's interpretation, the Supreme Court in *Cronic* would require a line to be drawn regarding the absence of counsel issue without regard to individual cases. In so doing, the Court instructs determination, without utilizing a case by case analysis, as to whether the taking of evidence is a critical stage of a criminal trial. Having made that decision, *Cronic* admonishes application across the board. A reading of Supreme Court precedents and the prior decisions of our court mandate that the taking of evidence is a *Cronic* critical stage of trial were a *Cronic* approach appropriate here, although I believe it not to be.

### C. *Critical Stage*

The majority goes far afield of our jurisprudence in its novel determination that trial, or portions of a trial, are not critical stages of prosecution. It announces that "we decline to give birth to a rule that the taking of evidence is necessarily a critical stage of trial." *Id.* The majority has confused the significance of trial, where evidence is taken based upon which guilt or innocence is determined, and pretrial critical stages.

In establishing the right to counsel at trial, the Supreme Court recognized "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel." *Johnson,* 304 U.S. at 462–63, 58 S.Ct. at 1022.

> [A]ny person haled into court ... cannot be assured a fair trial unless counsel is provided for him.... [L]awyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours.

*Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963). "The Sixth Amendment ... guarantees the right to the assistance of legal counsel *at criminal trial.*" *Ford,* 526 F.2d at 921 (emphasis added).

The Court additionally acknowledged that the accused "requires the guiding hand of counsel at every stage of the proceedings against him." *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932).

> [T]he Court has also recognized that the assistance of counsel cannot be limited to *participation in a trial....* Recognizing that the right to the assistance of counsel is shaped by the need for the assistance of counsel, we have found that the right attaches at *earlier,* "critical" stages in the criminal justice process 'where the results might well settle the accused's fate and reduce the *trial itself* to a mere formality.'

*Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985) (emphasis added) (quoting *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967)); *see United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1473 (11th Cir.) ("The Sixth Amendment right to counsel serves '*to assure aid at trial,*' and therefore attaches at the commencement of adversary judicial criminal proceedings ... [and] *extends to those 'critical' pretrial proceedings* in which 'the accused is confronted, *just as at trial,* by the procedural system....'" (emphasis added) (citations omitted)), *cert. denied,* — U.S. ——, 113 S.Ct. 436, 121 L.Ed.2d 356 (1992); *United States v. Terzado–Madruga,* 897 F.2d 1099, 1109 (11th Cir. 1990) ("Recognizing that the right to counsel is shaped by the need for assistance of counsel, the Court has found that the protections of the Sixth Amendment apply *not only at trial* but at '*earlier,* "critical" stages in the criminal justice process....'" (emphasis added) (citations omitted)); *see also United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) ("Although we have extended an accused's right to counsel to certain 'critical' pretrial proceedings, we have done so recognizing that at those proceedings, 'the accused [is] confronted, *just as at trial,* by the procedural system,

or by his expert adversary, or by both,' in a situation where the results of the confrontation 'might well settle the accused's fate and reduce the trial itself to a mere formality.'" (emphasis added) (citations omitted)); *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) ("Whatever else it may mean, the right to counsel granted by the Sixth ... Amendment[ ] means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him— 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (citation omitted)).

Under the Sixth Amendment, the Supreme Court accordingly has required counsel at *pretrial critical stages* of a defendant's prosecution. *See, e.g., Wade,* 388 U.S. 218, 87 S.Ct. 1926 (post-indictment lineup); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (pretrial custodial interrogation); *Hamilton v. Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (arraignment). *Trial,* however, is the centerpiece of the prosecutorial process for a defendant, where evidence of guilt or innocence is presented. Therefore, the right to counsel *at trial* is regarded as different from other pretrial critical stages. *See Williams v. Alabama,* 341 F.2d 777, 781 (5th Cir.1965) ("The right to counsel *upon trial is distinct* from the right to counsel upon arraignment, and neither should be confused with the right to effective representation at any other 'critical stage', such as during interrogation after arrest." (emphasis added)).

The Court further has held that "the role of counsel at the preliminary hearing differs sufficiently from the role of counsel *at trial* in its impact upon the integrity of the fact-finding process[;] ... 'the lack of counsel at a preliminary hearing involves less danger to "the integrity of the *truth-determining process at trial*" than the omission of counsel *at the trial itself* or on appeal.'" *Adams v. Illinois,* 405 U.S. 278, 281, 282, 283, 92 S.Ct. 916, 919, 31 L.Ed.2d 202 (1972) (emphasis added) (citation omitted). Thus, the *pretrial critical stages* are designated as points in the criminal process where counsel is constitutionally required to protect and preserve a *fair trial* for the accused. *Trial* is the cen-

tral and focal point of the prosecutorial continuum, the forum in which the defendant's guilt or innocence is determined. Counsel's presence throughout the trial is essential for making tactical decisions and determinations regarding the taking of evidence. *See Siverson,* 764 F.2d at 1216 (absent counsel is "unavailable to make any tactical judgments whatsoever").

The majority fails to cite a single case where counsel's temporary absence from *actual trial,* defined as the taking of evidence, is constitutional under the Sixth Amendment, and I have found none. Moreover, the Supreme Court has determined that defense counsel's lack of access to his client during an overnight *trial recess* is automatically grounds for reversal. *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). Indeed, our court joined the majority of other circuits in adopting a per se rule that a trial judge's preventing a defendant from consulting with his attorney during a *brief trial recess* violates the constitutional right to counsel and warrants a new trial. *Crutchfield v. Wainwright,* 803 F.2d 1103, 1110 (11th Cir.1986) (en banc) (plurality opinion), *cert. denied,* 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987). In contrast, we have recognized that counsel's absence, where he performs a merely "ministerial" function at sentencing involving a mandatory sentence, though a "rare and narrow circumstance," cannot cause a presumption of prejudice.[14] *Golden,* 755 F.2d at 1483 n. 9.

Vines's case is most aligned with *Green,* where the *temporary absence* of counsel occurred during *trial.* In *Green,* the defendant's attorney was absent during an after-noon session of court in which a witness was cross-examined. The attorney had explained to the trial judge that he had to be present in another courtroom on behalf of another client being prosecuted for murder, and that he would be content with codefendant's counsel's cross-examining the witness on behalf of defendant Green. When trial resumed the next morning, the absent attorney informed the judge that he had no cross-examination for the witness.

In granting the habeas writ, the district court determined that actual or constructive denial of counsel, "as opposed to the ineffective assistance of counsel who is present," is presumptively prejudicial and "that the absence of counsel *during the taking of evidence* must be found, as a matter of law, to violate the constitutional right to assistance of counsel." *Green,* 809 F.2d at 1260. Affirming the district court, the Sixth Circuit found two circuit precedents using harmless error analysis for absence of counsel at a preliminary hearing to be "distinguishable *precisely* because they dealt with the denial of counsel at preliminary hearings rather than *at trial.*" *Id.* at 1262 (emphasis added). The Sixth Circuit framed its appellate issue as whether "a harmless error analysis [is] appropriate to *a claim of the denial of counsel at trial.*" *Id.* (emphasis added). That court determined that the Sixth Amendment is implicated when counsel is absent from the proceedings, and prejudice is presumed. While the court noted that harmless error analysis may be appropriate in critical stages, specifically preliminary hearings, and jury deliberations, it concluded: "The absence of counsel during the taking of evidence on the defendant's guilt[15] is prejud-

---

14. Sentencing has been recognized as a critical stage of a *criminal proceeding* because, at this post-trial point in the criminal justice process, the *convicted* defendant again confronts the adversarial system and is entitled to counsel. *See Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977); *Golden,* 755 F.2d at 1482; *United States v. Huff,* 512 F.2d 66, 71 (5th Cir.1975).

15. In a criminal case, "the taking of evidence on the defendant's guilt" refers to the prosecution's case-in-chief. The Supreme Court's jurisprudence concerning the Sixth Amendment clearly identifies any point in the prosecution, trial or pretrial critical stage, when the adversarial pros-ecution encounters the accused or the defendant as necessitating the presence of counsel. In a trial with codefendants or multiple defendants, there is still only one prosecution case to establish guilt. With multiple defendants, particularly with conspiracy charges as in this case, there is the possibility that testimony and evidence adduced in the government's case may implicate more than one defendant, or have a spillover effect for the jury.

I believe that the majority is being far too literal in attempting to limit references by other courts to "the taking of evidence on the defendant's guilt" to one of multiple defendants, when the reference is to the prosecution's case-in-chief

ic[i]al per se and justifies an automatic grant of the writ 'without opportunity for a harmless error inquiry.' "[16] *Id.* at 1263 (citation omitted); *see McKeldin v. Rose,* 631 F.2d 458, 460 (6th Cir.1980) (per curiam) (denial of counsel *"at trial* may *never* be treated as harmless error"* (emphasis added)), *cert. denied,* 450 U.S. 969, 101 S.Ct. 1488, 67 L.Ed.2d 619 (1981).

The Supreme Court, our court, and other circuits have used harmless error analysis for absence of counsel during pretrial critical stages, and for jury deliberations, *but not for counsel's absence during actual trial. See Coleman v. Alabama,* 399 U.S. 1, 10–11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) (preliminary hearing); *United States v. Rapp,* 871 F.2d 957, 966–67 (11th Cir.) (modified *Allen* charge and cases cited therein regarding responses to jury questions during deliberations), *cert. denied,* 493 U.S. 890, 110 S.Ct. 233, 107 L.Ed.2d 184 (1989); *Thomas v. Kemp,* 796 F.2d 1322, 1326–27 (11th Cir.) (preliminary hearing), *cert. denied,* 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986); *United States v. Guida,* 792 F.2d 1087, 1094 (11th Cir.1986) (per curiam) (judicial response to jury request during deliberations); *Siverson,* 764 F.2d at 1218–20 (jury deliberations and return of the verdict); *McKeldin,* 631 F.2d at 460–61 (preliminary hearing);

*United States v. Calabro,* 467 F.2d 973, 988–89 (2d Cir.1972) (portion of jury deliberations and return of verdict), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587, *and cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); *Martin v. United States,* 182 F.2d 225, 227 (5th Cir.) (return of verdict), *cert. denied,* 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950). These pretrial critical stages, jury deliberations, and returns of verdicts, unlike the actual trial, do not implicate the inculpatory or exculpatory evidence taken at trial.

The majority proclaims that "[i]t would be incongruous to hold that the absence of counsel while a jury is being instructed should be subject to harmless-error analysis but that the absence of counsel during the taking of non-inculpatory testimony is not susceptible to harmless-error analysis." Majority Op. at 1128–29. I see quite a distinction. Jury instructions occur *after* all of the evidence has been taken during the trial. Further, any objections or participation in the jury instructions on the part of counsel occurs during the charge conference. Judges alone instruct juries.

Testimony, inculpatory or exculpatory, occurs during the actual trial.[17] I find no

---

generally. Where one defendant is involved, the majority's literal interpretation is correct. Vines, however, had a codefendant and there was a conspiracy charge. The absence of his counsel occurred during the government's case-in-chief. Although the government urges that the limiting instruction was a "cure" as to the first witness who testified in the absence of Vines's counsel, we cannot be certain that there was no spillover effect. This is particularly true when the government represented that this witness would testify as to Vines "indirectly." There was no limiting instruction or "cure" for the second, unexpected witness.

16. The majority attempts to distinguish *Green* by quoting the Sixth Circuit's comment that some absences by criminal defense counsel might be so *de minimis* that there would be no Sixth Amendment violation. Majority Op. at 1128 n. 9. The Sixth Circuit in *Green,* however, *affirmed* the district court's granting of the habeas writ in a case involving a temporary absence of counsel during trial quite analogous to Vines's claim. Extraneous commentary by a court is merely *dicta* with no precedential authority. *See New Port Largo, Inc. v. Monroe County,* 985 F.2d 1488, 1500 (11th Cir.) (Edmondson, J., specially con-

curring) ("[T]here should be a presumption that judges mean to do no more than to decide the case before them.... [F]or law-of-the-circuit purposes, ... every ... precedent ... ought to focus far more on the judicial decision than on the judicial opinion." (footnotes omitted)), *cert. denied,* —— U.S. ——, 114 S.Ct. 439, 126 L.Ed.2d 373 (1993).

17. The majority is convinced that testimony given by two witnesses in the absence of Vines's counsel did not implicate him. I am not so persuaded. The government informed the court that the first witness would implicate Vines "indirectly." Vines's counsel was unaware that the second witness would testify when he left the trial. Thus, any limiting instruction given to the jury concerning the first witness did not encompass the second, unexpected witness. The majority cites no authority for the two questions that it uses to evaluate the testimonies of the two government witnesses who testified during the absence of Vines's counsel and does not address admitted evidence. Majority Op. at 1130.

Additionally, I am unpersuaded by the majority's review of a hypothetical cross-examination of the Customs agent, the first witness who testified

precedent whatsoever for excusing counsel's absence during trial without constitutional waiver. The only authority with which the majority supports its unique theory of excusable absences of criminal defense counsel during actual trial is *dicta*. Even this *dicta* has not denominated specifically *when* in the course of the trial these excused absences might be. We do know that the Supreme Court and our en banc court have found that counsel's unavailability during *trial recesses* is a Sixth Amendment violation. Unlike the majority, I am reluctant to find defense counsel's temporary absence during the taking of any evidence *during trial* excusable or harmless and to be the first federal court to do so. This truly is an unprecedented decision.

In summary, I believe that the majority has transferred the Court's creation of pretrial critical stages of a criminal prosecution to the *trial* itself. This is particularly illogical since the pretrial critical stages were instituted to protect a defendant's constitutional rights *for trial.* To the extent that the

majority has attempted to show that the trial itself can be sectored into critical and noncritical segments, I am unconvinced by its *dicta* support.[18] Thus, I conclude that deprivation of counsel *during actual trial* is per se prejudicial, unavailable for any type of harmless error analysis, and constitutes reversible error unless there has been a proper waiver of counsel, as discussed above.

### D. *Total or Temporary Deprivation*

The majority apparently finds it significant that "Vines was not completely denied counsel," but that his "counsel was temporarily absent during a portion of the actual trial." Majority Op. at 1128. As I have discussed, I find no definitive authority whatsoever for excusing the absence of defense counsel during actual trial and certainly not during the government's case-in-chief. Additionally, using *Gideon* and *Cronic*,[19] the Seventh Circuit has addressed whether deprivation of the

---

in the absence of Vines's counsel. I do not think that it is appropriate for us to review "hypotheticals" or situations that did not actually occur. Moreover, this hypothetical cross-examination is presented by Vines's *appellate* counsel, who was not his trial counsel, and who, consequently, could not have known what defense strategy that excused counsel would have taken had he been present for the testimony.

Because Vines was acquitted on the conspiracy charge, the majority opines that the testimony from the two witnesses taken during the absence of Vines's counsel, even if it did relate to his codefendant alone, did not affect him. Frankly, I find the jury's verdicts concerning Vines to be inconsistent. When Vines was roused from his *sleep in the middle of the night by his brother-in-law* to assist in clandestinely unpacking and moving opaque plastic packages of cocaine, it appears that he willingly participated in the conspiracy. While the jury acquitted him on this charge, they did convict him on the distribution charge.

To convict Vines on the distribution charge, the jury must have inferred from the circumstantial evidence as to the cocaine importation-distribution operation that Vines at least aided in the attempted cocaine distribution by assisting his brother-in-law in the unloading and moving process. Any testimony relating to the cocaine smuggling operation, such as the *modus operandi* testimony given by Agent Blair, could have been significant in their determination. While this also is speculation, I find it more convincing than that suggested by the majority.

18. I acknowledge that courts have referred to critical stages of trial or trial as a critical stage. In the first instance, I find such references to be misnomers or based on *dicta*. I do not believe that so-called critical stages of trial are synonymous with pretrial critical stages. To the extent that these courts have denominated critical stages of trial, they are in agreement that the taking of evidence on the defendant's guilt *is* such a critical stage. Additionally, a general reference to a critical stage of the *proceeding* appears to refer to Court-designated points in the *criminal justice process* where counsel is constitutionally required rather than to segments of the trial. As I have explained, however, I am opposed to dividing an actual criminal trial into portions because I find no direct authority from the Supreme Court for so doing.

The second instance is where courts have loosely referred to trial as a critical stage. In context, I find that this reference appears to be to the entire continuum of the criminal prosecution, including the various pretrial stages and extending to encompass trial as the apex. As I have discussed, I believe that this is an inaccurate grouping of critical stages. The Supreme Court clearly created the pretrial critical stages to protect the accused's constitutional rights *for trial.*

19. Although I have distinguished *Cronic* as an ineffective assistance of counsel case rather than an absence of counsel case, I indulge its use here because *Siverson* dealt with precisely the issue of total or temporary absence of counsel and because the majority uses *Cronic* in its analysis.

right to counsel means total absence or temporary absence. *Siverson,* 764 F.2d at 1216.

The Seventh Circuit observed that complete denial of counsel "might seem to embrace only those cases in which a defendant is without counsel throughout all the stages of the trial." *Id.* Under *Cronic,* however, the court found such a restricted interpretation to be negated: "'The presumption that counsel's assistance is essential requires us to conclude that *a trial is unfair if the accused is denied counsel at a critical stage of his trial.*' " *Id.* (emphasis added) (quoting *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047). The Seventh Circuit noted the *Cronic* Court's emphasis on prior Court decisions that "'uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.'" *Id.* (quoting *Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25). *Cronic* concerned actual trial, or the taking of evidence on the defendant's guilt, as opposed to pretrial critical stages or jury instructions or deliberations. Thus, *Cronic* does not limit denial of counsel to complete deprivation throughout all stages of trial.

### E. *Structural Defect or Trial Error*

In view of the Supreme Court's clear directives regarding a criminal defendant's right to counsel, the majority's most interesting twist in its Sixth Amendment analysis is its contorted conclusion that the temporary absence of Vines's counsel was not a structural defect. The Supreme Court announced that the *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), "harmless beyond a reasonable doubt" review standard is inapplicable for habeas or collateral review by federal courts. *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993).[20] The

Court held that the harmless error standard of *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), whether the trial error " 'had substantial and injurious effect or influence in determining the jury's verdict,' " is the proper review standard for federal courts in habeas cases.[21] *Brecht,* —— U.S. at ——, 113 S.Ct. at 1714, 1722 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253); *see Cumbie v. Singletary,* 991 F.2d 715, 724 (11th Cir.) (recognizing the new *Brecht–Kotteakos* standard for habeas review of trial errors), *cert. denied,* —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993); *accord Stoner v. Sowders,* 997 F.2d 209, 213 (6th Cir.1993); *Vanderbilt v. Collins,* 994 F.2d 189, 198–99 (5th Cir.1993); *Henry v. Estelle,* 993 F.2d 1423, 1426 (9th Cir.1993).

The *Brecht* Court explains the distinction between trial errors, to which the *Brecht–Kotteakos* habeas standard applies, and structural defects, which are ineligible for any type of harmless error analysis:

Trial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." *At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." The existence of such defects—deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect the entire trial process.* Since our landmark decision in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of *the trial type.*

---

20. The Court explained that "since we have never squarely addressed the issue, and have at most assumed the applicability of the *Chapman* standard on habeas, we are free to address the issue on the merits." *Brecht,* —— U.S. at ——, 113 S.Ct. at 1718. Following *Brecht,* I am perplexed by the majority's citation of *Chapman* and recitation of its inapplicable standard for collateral review. Majority Op. at 1128.

21. While the majority does acknowledge this review standard, it nevertheless continues to refer to the temporary absence of Vines's counsel as "harmless." *See, e.g.,* Majority Op. at 1131 ("[W]e conclude that the temporary absence of Vines's counsel during the testimony of Blair and Evans was *harmless.*" (emphasis added)).

*Brecht,* —— U.S. at ——, 113 S.Ct. at 1717 (emphasis added) (citations and footnote omitted).

Trial error, which occurs during presentation of the case to the jury, implicitly implicates ineffective assistance of counsel, necessitating the *presence* of counsel. This premise is emphasized by the determination of trial error: whether evidence proffered by counsel and quantitatively assessed in context with other admitted evidence was harmless. *Absence of counsel* is not evidence or trial error that can be quantitatively evaluated; it is a fundamental, constitutional deprivation or *structural defect.*[22]

Stating that the Court had "identified the precise contours" of the *Brecht–Kotteakos* habeas review standard, our court detailed its understanding of the *Brecht* "trial error"-"structural defect" dichotomy:

> The threshold issue in all harmless-error inquiries is whether the violation in question amounts to "trial error" or a "structural defect." *Structural defects are not susceptible to harmless-error analysis; trial errors are.* Trial error "occur[s] during the presentation of the case to the jury, and ... may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Structural defects, by contrast, compromise the entire trial process; they involve deprivations of constitutional protections so basic that in their absence no criminal trial can be deemed reliable, nor any punishment fundamentally fair.* Examples of trial error include the admission of an involuntary confession, and the improper use at trial of a defendant's silence after receiving *Miranda* warnings. *Typical structural errors are the total deprivation of the right to counsel at trial* and the unlawful

exclusion of members of the defendant's race from the grand jury.

*Duest v. Singletary,* 997 F.2d 1336, 1338 & n. 3 (11th Cir.1993) (per curiam) (emphasis added) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1107, 127 L.Ed.2d 418, *and cert. denied,* —— U.S. ——, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994).

Both the Supreme Court and our court have used deprivation of the right to counsel as examples of *structural defects* unavailable for harmless error analysis. Additionally, in *Crutchfield,* our en banc court stated that a previous panel "did not intend to suggest [in *dicta* ] that a harmless error inquiry would always be required after finding a violation of the defendant's right to assistance of counsel"; some constitutional violations require a new trial "regardless of the standard employed." 803 F.2d at 1107. *Any* type of harmless-error analysis, including the *Brecht–Kotteakos* standard, is not applicable to a *structural defect* such as deprivation of the right to counsel. *See Holloway v. Arkansas,* 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) ("[T]his Court has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can *never* be treated as harmless error.'" (emphasis added) (quoting *Chapman,* 386 U.S. at 23, 87 S.Ct. at 827–28)).

Vines contends that he was denied his right to counsel because of an invalid waiver of counsel and, thus, presents a fundamental, constitutional violation, or a *structural defect* in his trial. I conclude that Vines's deprivation of counsel *during trial* is prejudicial per se, is a *Brecht* "structural defect" unavailable for any type of harmless error analysis, and reversible error *unless* there was an knowing, intelligent and voluntary waiver of counsel. Based on the record before us, it does

---

**22.** The majority concludes that Shapiro's failure to object, to request a limiting instruction, and to cross-examine are capable of quantitative assessment in the context of all of the proffered evidence and supports this conclusion with *dicta* from *Holloway,* a conflict of interests case. Majority Op. at 1129 & n. 11; *see id.* at 1130–32. It further proceeds to evaluate the potential effect of the testimonies of two government witnesses that occurred during the absence of Vines's counsel. The constitutional issue in this case escapes the majority. Vines's counsel was absent without constitutional waiver. Therefore, he *could not* have objected to the testimonies of these witnesses, requested a limiting instruction, or cross-examined them because he would have had to have been *present* to do so. Additionally, I have explained that I am not convinced that the testimony and evidence presented in Shapiro's absence was innocuous to Vines. *See supra* note 17.

not appear that such a waiver was obtained. An evidentiary hearing by the district court, however, should establish conclusively the facts surrounding the putative waiver.

### IV. CONCLUSION

The paramount constitutional concern, "structural defect," and the reason that I would remand this case is for determination of a possible, albeit likely, violation of the Sixth Amendment right to counsel, manifestly implicating waiver of counsel analysis. With ingenuity, the majority has attempted to avoid the waiver issue. I find no authority for treating this "structural defect" of potential denial of the right to counsel *at trial* under *any* type of harmless error analysis.

Despite the verdict on conspiracy, Vines *was convicted* on the distribution charge and his participation in the cocaine smuggling operation was the apparent reason for his conviction. Since the present record shows that the trial judge did not obtain a constitutionally permissible waiver of the right to counsel, we should remand for a hearing on whether Vines's waiver of counsel was knowing, intelligent and voluntary. Constitutional waiver of the Sixth Amendment right to counsel *is* the issue in this appeal. Because the majority disagrees and pursues a constitutionally untenable tangent, I am compelled to dissent.