

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2004

# Scherzer v. Ortiz

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4608

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Scherzer v. Ortiz" (2004). *2004 Decisions.* Paper 393.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/393

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No. 02-4608

KEVIN SCHERZER,

Appellant

v.

ALVIN ORTIZ, JR., ADMINISTRATOR,
Mountainview Youth Correctional Facility;
The Attorney General of the State of
New Jersey, Peter G. Verniero

_____

Case No. 02-4609

KYLE SCHERZER,

Appellant

v.

ALVIN ORTIZ, JR., ADMINISTRATOR,
Mountainview Youth Correctional Facility;
The Attorney General of the State of
New Jersey, Peter G. Verniero

_____

Case No: 03-1023

CHRISTOPHER ARCHER,

Appellant

v.

JOSEPH RIZZO, Administrator,
Mountainview Youth Correctional Facility;
JOHN J. FARMER, JR., The Attorney General
Of the State of New Jersey

On Appeal From the United States
District Court for the District of New Jersey
(Docket Nos. 99-cv-00130; 99-cv-00900; 00-cv-04484)
District Court Judge: The Honorable Faith S. Hochberg

_____

Argued June 18, 2004


Before: ALITO, SMITH and [*] WALLACE, *Circuit Judges*

(Filed August 18, 2004)


John Vincent Saykanic, Esq. (Argued)
1135 Clifton Avenue
Clifton, New Jersey 07013
*Counsel for Appellant Kevin Scherzer*

Miles R. Feinstein, Esq. (Argued)
1135 Clifton Avenue
Clifton, New Jersey 07013
*Counsel for Appellant Kyle Scherzer*

    *   The Honorable J. Clifford Wallace, Senior United States Circuit Judge for the
Ninth Circuit, sitting by designation.

Martin P. Geisler, Esq. (Argued)
215 Lanza Avenue
Garfield, N.J.  07026
*Counsel for Appellant Christopher Archer*

Paula T. Dow
Assistant Attorney General
Acting Essex County Prosecutor
Essex County Courts Building
Newark, New Jersey 07102

Barbara A. Rosenkrans [Argued]
Special Deputy Attorney General
Acting Assistant Prosecutor
50 West Market Street
Essex County Courts Building
Newark, New Jersey 07102
*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Kevin Scherzer, Kyle Scherzer and Christopher Archer appeal from the District

Court's denial of their petitions for a writ of habeas corpus.  The Scherzers assert that

they were denied effective assistance of counsel during a lengthy trial that lasted from

October, 1992 to March, 1993.  All three defendants argue that they were denied their

right to a fair trial due to the lack of an impartial jury and several instances of

prosecutorial misconduct.  For the reasons set forth below, we reject the defendants'

arguments and affirm the District Court.

I.

The underlying facts developed at the trial of the Scherzers and Archer are

outlined in the New Jersey Superior Court's exhaustive treatment of their direct appeal. *State v. Scherzer*, 694 A.2d 196 (N.J. Super. 1997). Because we write only for the parties, we will not recite them again here. Kevin Scherzer and Kyle Scherzer were indicted along with three co-defendants, not present in this appeal, in May 1990 on "various sexual assault charges allegedly committed against a mentally defective victim, M.G." *Id*. at 209. In September 1990, the prosecution's request to have three of the juvenile defendants, one of whom was Archer, tried as adults was granted. All eight defendants were indicted in a superceding indictment charging the following: Count (1) conspiracy to commit aggravated sexual assault; Counts (2) and (4) first degree aggravated sexual assault (sexual penetration of a mentally defective person); Counts (3) and (5) first degree aggravated sexual assault (sexual penetration using physical force or coercion); and Counts (6)-(9) third degree aggravated criminal sexual contact.

Pre-trial hearings and motions began in June 1991 and continued until March 1992. Jury *voir dire* began on September 22, 1992. Trial commenced on October 15, 1992. The jury reached its verdict on March 16, 1993. All three defendants were found guilty on Counts One and Three. Kevin Scherzer and Christopher Archer were found guilty of Count Two, first degree aggravated sexual assault upon a mentally defective person. Kyle Scherzer was found guilty of the lesser included offense of attempted aggravated sexual assault. Each was acquitted on Counts Four through Nine. The defendants were sentenced as young adult offenders and each received sentences of an indeterminate term not to exceed 15 years. The defendants filed a timely appeal with the

4

New Jersey Superior Court Appellate Division.

On appeal, the defendants' convictions were affirmed on Counts One and Two, but vacated with respect to Count Three. The Appellate Division determined that "the State had to prove that defendants engaged in an act of sexual penetration while aided or abetted by at least one other person and that defendants used force or coercion. . . . [W]e are convinced that the State failed to present enough evidence to prove to a reasonable jury that force or coercion were used against M.G." *Scherzer*, 694 A.2d at 215. The defendants' convictions on Count Three, therefore, were vacated. The defendants were re-sentenced on June 30, 1997. Kevin Scherzer and Archer each received a sentence of an indeterminate term not to exceed 15 years. Kyle Scherzer received an indeterminate term not to exceed seven years. All three defendants appealed their sentences, which were affirmed by the Appellate Division on January 14, 1998.

Each of the three defendants then filed a petition for a writ of habeas corpus in the District Court. The defendants argued that their writs should issue because (1) they had been deprived of the effective assistance of counsel in violation of their Sixth Amendment rights; (2) they had been denied their right to an impartial jury in violation of their Sixth Amendment rights; (3) prosecutorial misconduct had robbed them of their right to a fair trial; (4) the introduction of testimony by the state's witness Dr. Ann Burgess violated their right to a fair trial; and (5) there was insufficient evidence to convict on Counts One and Two. The District Court determined that the petitioners had adequately exhausted their state court remedies as required by the Antiterrorism and

5

Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, but denied their petitions on December 13, 2002. This Court granted the Kevin Scherzer's request for a Certificate of Appealability on the following grounds:

> (1) whether the Scherzers were denied their right to counsel by their attorneys' absences and, if so, whether a harmless error analysis applies when counsel is absent during critical stages of the proceedings and, if it does, whether the attorneys' absences in this case were harmless . . . ; (2) whether the petitioners' right to counsel was violated by a conflict of interest; (3) whether the petitioners were denied their right to an impartial jury by the jurors' prayers for the victim and certain jurors' exposure during trial to co-workers' negative comments about the petitioners; (4) whether the prosecutor improperly commented on the petitioners' behavior at trial and on their failure to testify; and (5) whether the errors alleged in Ground Five of the § 2254 petitions prejudiced the petitioners when considered cumulatively.

This Court granted Kyle Scherzer's request for a Certificate of Appealability on the same grounds, plus an additional one: whether the trial court's instructions regarding accomplice liability were proper. Christopher Archer's Certificate of Appealability was limited to the grounds enumerated (3), (4), and (5) in Kevin Scherzer's Certificate of Appealability.

## II.

Because the District Court did not conduct its own evidentiary hearing, we must review the state court's decision applying the same standard as the District Court. *Marshall v. Hendricks*, 307 F.3d 36, 50 (3d Cir. 2002).[1] Our standard of review is governed by AEDPA, 28 U.S.C. § 2254(d), which states:

An application for a writ of habeas corpus on behalf of a person in custody

---

1 We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253.

6

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court explained this standard in *Williams v. Taylor*, 529 U.S. 362, 405 (2000), holding that a decision is contrary to established federal law where (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Further, an unreasonable application of the Court's clearly established precedent occurs when (1) "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts"; or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407.

This Court has interpreted AEDPA and the Supreme Court's direction in *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000), explaining:

[i]n analyzing the "unreasonable application of" provision, we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices. . . . In other words, the federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

7

precedent.

*Id.* at 197 (internal quotation and citations omitted).

III.

Kevin and Kyle Scherzer claim that they were denied their Sixth Amendment

rights to effective assistance of counsel—first, by the recurrent absences of Kevin's

counsel at trial, and second, due to joint representation by their counsel when a conflict of

interest occurred.[2] We address each in turn.[3]

A.

Kevin Scherzer claims that his Sixth Amendment rights were violated when the

trial court allowed his counsel to be absent during pre-trial and trial proceedings and

allowed co-counsel to stand-in.[4] The Appellate Division explained that under *United*

---

2 We do not address the Scherzers' claim that their Sixth Amendment right to effective assistance of counsel was violated due to the trial court's failure to inform them as to the hazards of dual representation because the issue was not certified in the Certificate of Appealability. 28 U.S.C. § 2253.

3 Judge Alito concludes that cases involving the lack of representation are inapposite because the petitioners were never unrepresented. Rather, they were at times jointly represented. He therefore believes that the correct legal standard is the one discussed in Part III.B of the opinion. Because he concludes that the attorneys were never actively representing conflicting interests, he would reject the petitioner's arguments regarding their representation solely for the reasons set out in Part III.B and not III.A.

4 The Certificate of Appealability for Kyle Scherzer included the question of whether both "the Scherzers" were denied their right to counsel based on "their attorneys' absences." Before us, Kyle Scherzer's argument was limited to the argument that his "attorney became ineffective due to his having to cover . . . for Kevin's absentee attorney." Appellant's Br. at 28. That argument is address *infra* as it relates to the Scherzers' argument that their Sixth Amendment rights were violated when Kyle Scherzer's attorney represented their conflicting interests.

8

*States v. Cronic*, 466 U.S. 648, 659 (1984), and its progeny,[5] prejudice must be presumed

if the Scherzers' "counsel fail[ed] to appear at a critical stage of proceedings." *Scherzer*,

694 A.2d at 237.  However, the Appellate Division reasoned that if the occasions during

which the absences occurred were not critical stages, then the harmless error standard

articulated by *Chapman v. California*, 386 U.S. 18, 24 (1967), *i.e.,* "whether there is a

reasonable possibility that the evidence complained of might have contributed to the

conviction," is appropriate.

The Appellate Division stated that it had

> no doubt that certain testimonial evidence missed by Kevin's counsel was a critical stage of the trial. [Dr.] Burgess presented crucial testimony about the [rape trauma syndrome] and she described M.G.'s drawings directly inculpating Kevin . . . Thus, since Kevin had no attorney present during critical stages of the proceeding, he was denied effective assistance of counsel, unless he waived the right to counsel.

*Scherzer*, 694 A.2d at 237.  The Appellate Division determined that Kevin had not

waived his right to counsel.  It then turned to the question of "whether the attorney's

absence during the taking of testimony is harmful error *per se*, or whether we may apply

the *Chapman* harmless error analysis in such a situation."  *Id*. at 239.  Although, as cited

above, the Appellate Division determined the testimony of Dr. Burgess to be a critical

stage of the trial, it rejected the notion that trial testimony was *per se* a critical stage.

Agreeing with the Sixth Circuit's analysis in *Green*, the Appellate Division determined

that temporary absences from testimony should be considered under the harmless error

---

5  *Vines v. United States,* 28 F.3d 1123 (11th Cir. 1994); *Green v. Arn*, 809 F.2d 1257 (6th Cir.), *vacated on other grounds*, 484 U.S. 806 (1987) (mem.); and *Siverson v. O'Leary*, 764 F.2d 1208, 1217-20 (7th Cir. 1985).

9

standard outlined in *Chapman*, rather than the presumptive prejudice in *Cronic*. It conducted a careful review of the record and of counsel's absences prejudiced Kevin Scherzer.

We must determine under § 2254(d) whether the Appellate Division's application of *Cronic*, 466 U.S. at 659, and *Chapman*, 386 U.S. at 24, was reasonable. We recognize that it appears from the Appellate Division's opinion that it determined that both the *per se* prejudice rule of *Cronic* and the harmless error standard of *Chapman* applied to the absences of Scherzers' counsel during trial. As the two standards are mutually exclusive, however, it would be unreasonable to apply both to a single situation. Taken in their separate contexts, however, we conclude that the two discussions work in concert to produce a reasonable application of Supreme Court precedent.

The Appellate Division used the term "critical stage" when discussing the testimony of Dr. Burgess, a psychologist who testified as to whether M.G. exhibited the symptoms of rape trauma syndrome, relying, in part, on depictions of the rape drawn by M.G. The Appellate Division had already concluded that the trial court committed error by allowing Dr. Burgess to testify on the subject of rape trauma syndrome. *Scherzer*, 694 A.2d at 218. It limited that ruling, stating "We believe that error had the capacity to taint the jury verdict only as to Count Three, penetration by force or coercion." *Id*. The defendants' convictions on Count Three, however, were vacated because the State had failed to present sufficient evidence to prove the elements to a reasonable jury. The Appellate Division determined that the testimony had no impact on the remaining counts

10

of the defendants' conviction. *Id*. at 219.

Similarly, the Appellate Division held that the trial judge improperly allowed Dr. Burgess to testify about the drawings made by M.G. However, the drawings "had no capacity to prejudice the jury" on the remaining Count Two. *Id*. The state had presented evidence, through the testimony of Christopher Archer's brother Paul, who pled guilty to charges arising from the same incident prior to trial, that both Kevin and Christopher had engaged in the actions described by Dr. Burgess.

The Appellate Division's determination that the testimony of Dr. Burgess was a "critical stage" must be viewed in this context. While the Appellate Division did identify Dr. Burgess's testimony as a critical stage, it had already obviated any prejudice that could have come from that testimony by vacating the defendants' convictions on Count Three. We cannot say that the Appellate Division's decision to refuse to extend *Cronic*'s presumption of prejudice to a portion of the proceedings that had no effect on the ultimate outcome was unreasonable.

In the same way, the Supreme Court has not yet spoken on whether the *Cronic* presumption of prejudice applies where counsel is temporarily absent from non-critical stages of trial. The Appellate Division made painstaking review of the record, examining the effect of each absence. Given this, we cannot conclude that their decision that the temporary absences of the Scherzers' counsel did not create a structural defect, as those

11

with which *Cronic* was concerned, was unreasonable.[6] 466 U.S. at 659. The temporary

absences of Kevin Scherzer's counsel, therefore, do not provide a basis upon which we

may grant habeas relief.

B.

The Scherzers also claim that their Sixth Amendment rights were violated when

Kyle Scherzer's attorney represented Kevin, because Kevin's interests conflicted with

those of his brother Kyle.[7] They argue that the joint representation violated their Sixth

Amendment right to counsel whose loyalty was "untrammeled and unimpaired," citing

*Glasser v. United States*, 315 U.S. 60, 70 (1942). The Appellate Division acknowledged

that "[t]here was a potential for conflict of interest between Kyle and Kevin, as a possible

trial strategy for Kyle would have been to minimize his involvement in the sexual assaults

and to argue he was not an accomplice of [his] codefendants because he did not share

---

6 The Supreme Court has cautioned that "[t]he federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did in the habeas petitioner's case." *Williams*, 529 U.S. at 410. We may not, therefore, base our conclusion that the Appellate Division's opinion was reasonable simply on the fact that at least one court has ruled in the same manner as they did. However, that the Appellate Division's conclusions here are in line with the Eleventh Circuit's ruling in *Vines*, 28 F.3d at 1129, serves to bolster our determination that it was reasonable. *Scherzer*, 694 F.2d at 240.

7 We recognize the inherent tension between this argument and Kevin's earlier argument that he was left without representation during critical portions of the trial. A conflict of interest can exist only insofar as Kyle's attorney actually represented Kevin while Kevin's attorney was absent. Thus, the Scherzers' conflict argument relies upon joint representation. Conversely, the Scherzers' argument that they were denied representation during a "critical stage" of the trial inherently requires a finding that there was no such joint representation. Because both arguments fail, however, we need not resolve this tension.

12

their purpose." *Scherzer*, 694 A.2d at 244. The Appellate Division determined that "[i]n light of the potential conflict of interest and the absence of an express waiver by Kyle, he was deprived of his Sixth Amendment right to a counsel whose loyalty was untrammeled and unimpaired." *Id*. (internal quotation and citation omitted). Nonetheless, the Appellate Division concluded that "while Kyle and Kevin may have in theory had a *potential* conflict of interest, in fact, the defense strategy chosen by them resulted in there being no conflict between their positions at trial, because both defendants had the same interest and plan." *Id*. Applying New Jersey law, *State v. Land*, 372 A.2d 297 (N.J. 1977), the Appellate Division concluded that "the consistent trial strategy of all defense counsel results in the constitutional error being harmless beyond a reasonable doubt." *Scherzer*, 694 A.2d at 244.

Although the Appellate Division did not cite to the appropriate Supreme Court precedent, we hold that its conclusion is neither "contrary to," nor an "unreasonable application," of clearly established federal law as articulated by Supreme Court precedent. *Williams*, 529 U.S. at 407. The Supreme Court requires that "in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an *actual conflict of interest* adversely affected [the defendant's] lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (emphasis added). *See also*, *Burger v. Kemp*, 483 U.S. 776, 783 (1987) (prejudice is presumed "only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance" (internal

quotations omitted)). There is no presumption of prejudice where there is simply a *potential* for conflict. *Glasser*, 315 U.S. at 76.

The Scherzers identify only one instance that could be deemed an actual, rather than a potential, conflict of interest. Dr. Burgess relied upon, in part, drawings made by M.G. depicting the rape, showing Kevin with a greater involvement than Kyle. At the time the testimony was given, Kyle's attorney was representing both Kevin and Kyle. The Scherzers contend that the failure of Kyle's attorney to ask questions at that point was result of a conflict between his duty to Kevin to impeach the witness and inquire as to whether the perpetrator was not, in fact, Kyle, and his duty to protect Kyle from such impeachment.

This argument suffers from the same infirmity present in the Scherzers' absence of counsel argument. The Appellate Division determined that allowing Dr. Burgess to testify on this topic was improper and vacated Count Three as a result. Any prejudice which could have resulted from her testimony had already been obviated by the Appellate Division. We consider the Appellate Division's decision not to extend the presumption of prejudice required by *Cronic* reasonable under the circumstances. 466 U.S. at 661.

Further, the Appellate Division determined that Kevin and Kyle had chosen not to pursue a defense strategy of minimizing their respective involvement in the rape. *Scherzer*, 694 A.2d at 244. The Appellate Division was

> convinced based on the entire record that the three defendants, Kevin, Kyle, and Archer, presented a joint defense in which the trial attorneys did not attempt to distinguish their clients or their conduct from the other defendants. The strategy of each defendant, as shown from their opening through their closing arguments, was

14

to establish that M.G. consented to the sexual activities, to deny that M.G. was mentally defective, and to attack the prosecution and its case.

*Id*. at 240-41. As the Appellate Division noted, Paul Archer testified that Kevin Scherzer and Christopher Archer had been involved in the actual penetration of M.G. *Id*. at 219. The Scherzers do not contend that Kevin's attorney was absent during this testimony, or that Kevin's attorney deviated from their trial strategy during Paul Archer's testimony by asking the questions that they argue Kyle Scherzer's attorney failed to ask during Dr. Burgess' testimony. It appears, then, that the Scherzers had a strategic basis for deciding not to point fingers at one another. Thus, any conflict of interest was simply a potential one. *Cf. Burger*, 483 U.S. at 784 (acknowledging that strategic reasons for arguing lesser culpability may exist and may not be related to any potential conflict of interest); *Cuyler*, 446 U.S. at 348. The defendants thus failed to show an actual conflict of interest. As such, the Appellate Division's determination that the potential conflict of interest never materialized into an actual one, and that no Sixth Amendment violation occurred, is reasonable.

IV.

The defendants further argue that their Sixth Amendment right to a fair and impartial jury was violated by the jurors' prayers that occurred each day before trial, as well as by the exposure of a few jurors, during a break in trial, to their co-workers' statements about the defendants' guilt. We disagree. *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991), counsels that "our own cases have stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of

15

inquiry that might tend to show juror bias." Relying on this Court's precedent and upon New Jersey law, the Appellate Division concluded that the trial judge had made the requisite "probing inquiry into the possible prejudice caused by any jury irregularity, relying on his or her own objective evaluation of the potential for prejudice rather than on the jurors' subjective evaluation of their own impartiality." *Scherzer*, 694 A.2d at 258. Our review of the record comports with that of the Appellate Division: the trial court judge thoroughly questioned the jurors, discharged those he found lacking, and ensured that the jury was not tainted.

V.

Defendants next claim that the prosecutor improperly commented on both their behavior at trial and their failure to testify in violation of the Fifth Amendment right to remain silent, their Sixth Amendment right to a fair trial, and their Fourteenth Amendment due process right. Reviewing the record, the Appellate Division recognized that "[p]rosecutorial misconduct . . . will not warrant reversal unless the conduct was so egregious so as to deprive defendant of a fair trial." *Id*. at 230. After carefully reviewing each of the allegedly inappropriate comments, the Appellate Division concluded that "any possible infringement on defendants' right to silence did not rise to the level of reversible error because of the effective action of the trial judge in re-establishing in the minds of the jurors the importance of [the right to silence]." *Id*. at 234.

When considering prosecutorial misconduct, we must determine whether "the prosecutor's remarks . . . so infected the trial[] with unfairness as to make the resulting

16

conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (internal citations and quotations omitted). A trial court may not permit commentary either on the defendants' silence, or on their failure to explain "any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of the facts within his knowledge." *Griffin v. California*, 380 U.S. 609, 610 (1965). The prosecutor's comments here can fairly be characterized as comments on the defendants' failure to live up to promises made during oral argument. Further, any inappropriate statements made by the prosecutor were met immediately with a corrective instruction by the trial court, which reminded the jury that the defendants had neither a burden of proof, nor an obligation to testify. On these facts, the prosecutor's actions did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. 643. The Appellate Division's rejection of the defendants' claims, therefore, was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

VI.

Lastly, the defendants list multiple actions taken by the prosecutor which they argue, considered cumulatively, violated their right to due process. The cumulative effect of the prosecutor's actions must be reviewed against the standard of whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Our review of the record leads to the conclusion that the Appellate Division's determination that any misconduct by the prosecutor was

17

ameliorated by the trial judge's actions was a reasonable application of the standard set forth in *Donnelly*. They do not, therefore, provide a basis upon which we may grant relief. Finally, the Appellate Division's determinations with respect to the other alleged instances of trial court error likewise were reasonable applications of Supreme Court precedent.

## VII.

Kyle Scherzer challenges the trial court's instruction on accomplice liability. However, because his argument relies wholly on state law interpretation, it may not be maintained in a federal habeas proceeding. *Carpenter v. Vaughn*, 296 F.3d 138, 153 (3d Cir. 2002). To the extent Kyle Scherzer's claims a constitutional violation, we hold that the Appellate Division's decision was not "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).

## VIII.

For the foregoing reasons we determine that the Appellate Division reasonably applied the pertinent Supreme Court precedent to each of the alleged trial infirmities. Given our limited standard of review, we decline to issue the requested writs. We therefore affirm the judgment of the District Court.